UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| ANGELA SALINAS, Administrator of the Estate of EMMA SALINAS, Deceased,<br><br>Plaintiff,<br><br>v.<br><br>INDIANA DEPARTMENT OF CHILD SERVICES, *et al.*,<br><br>Defendants. | No. 2:18 CV 374 |

## OPINION and ORDER

This matter is before the court on two motions to dismiss. (DE ## 57, 64.) For the reasons set forth below, the motions are granted, in part, and denied, in part.

### I.  BACKGROUND

As alleged in the amended complaint, Emma Salinas, an infant, was placed in the foster home of Jamilia Hodge in October 2016. (DE # 55 ¶ 29.) The amended complaint further alleges that in February 2017, two family case managers working for the Indiana Department of Child Services ("DCS") were informed of physical, emotional, nutritional and other abuse and neglect involving children in Hodge's care. (DE # 55 ¶¶ 11, 12, 21-22.) Emma died in the foster home on May 4, 2017. (DE # 55 ¶ 29.)

Emma's mother and the administrator of Emma's estate, Angela Salinas ("plaintiff"), filed a lawsuit on October 3, 2018. (DE # 1.) Plaintiff alleges, *inter alia*, that DCS and numerous DCS employees in their official and personal capacities ("State defendants") are liable for constitutional violations under 42 U.S.C. § 1983. Plaintiff

alleges that a private foster care placement agency, Benchmark Family Services Inc. ("Benchmark"), is liable for the same. Plaintiff further alleges that DCS, the State defendants, and Benchmark are liable under 42 U.S.C. § 601 and 45 C.F.R. § 233 *et seq*.

DCS and the State defendants have moved for dismissal of the aforementioned claims against them under Federal Rule of Civil Procedure 12(b)(6). (DE # 57.) Benchmark has done the same. (DE # 64.) Both motions are fully briefed and ripe for ruling.

## II.     LEGAL STANDARD

When reviewing a motion to dismiss pursuant to Rule 12(b)(6), the court "take[s] the facts alleged in the complaint as true, drawing all reasonable inferences in favor of the plaintiff." *Pisciotta v. Old Nat'l Bancorp.*, 499 F.3d 629, 633 (7th Cir. 2007). In assessing the pleading of those facts, the court must be cognizant that a complaint filed in federal court is governed by the liberal notice-pleading requirements of the Federal Rules of Civil Procedure, which only requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy Rule 8(a), "the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus,* 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"While the federal pleading standard is quite forgiving, . . . the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ray v. City of Chicago,* 629 F.3d 660, 662-63 (7th Cir. 2011);

2

*Twombly,* 550 U.S. at 555, 570. A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To meet this standard, a complaint does not need detailed factual allegations, but it must go beyond providing "labels and conclusions" and "be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citing *Sanjuan v. Am. Bd. of Psychiatry & Neurology*, 40 F.3d 247, 251 (7th Cir. 1994) among other authorities). As the Seventh Circuit explained, a complaint must give "enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

However, the plaintiff does not need to plead facts that establish each element of a cause of action and, "[a]t this stage the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint." *Sanjuan*, 40 F.3d at 251. Even if the truth of the facts alleged appears doubtful, and recovery remote or unlikely, the court cannot dismiss a complaint for failure to state a claim if, when the facts pleaded are taken as true, a plaintiff has "nudged their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570.

### III. DISCUSSION

#### A. Claims under 42 U.S.C. § 1983

##### 1. *DCS & State Defendants*

DCS and the State Defendants first argue that plaintiff's Section 1983 claims are untimely. The parties do not dispute that the statute of limitations for plaintiffs' claims

3

under Section 1983 is two years. The parties dispute, however, when plaintiff's claim accrued. In *Wallace v. Kato,* 549 U.S. 384, 388 (2007), the United States Supreme Court stated that the standard rule is that a § 1983 cause of action accrues when a plaintiff has "a complete and present cause of action," which is when a plaintiff "can file suit and obtain relief." In a Section 1983 case where it is alleged that injuries caused the death of the decedent, the accrual date is the date of the decedent's death. *Hahn v. Walsh,* No. 09-CV-2145, 2010 WL 169479, at *1 (C.D. Ill. Jan. 7, 2010); *Kelderhouse v. Fox,* 2008 WL 2340137, at *2 (N.D. Ill. 2008). Because this lawsuit was filed within two years of Emma's death, the Section 1983 claims are not time-barred.

As for the merits of the Section 1983 claims, DCS, an agency of the State of Indiana, is immune from suit under the Eleventh Amendment. *Sanders v. Indiana Dep't of Child Servs.,* 806 F. App'x 478, 480 (7th Cir. 2020) (citing *Will v. Dep't of State Police,* 491 U.S. 58, 70–71 (1989); *Kolton v. Frerichs,* 869 F.3d 532, 535 (7th Cir. 2017)). So are the State defendants to the extent that they are named in their official capacities in this lawsuit. *Hale v. Indiana Dep't of Child Servs.,* 784 F. App'x 956, 957 (7th Cir. 2019). Plaintiff argues that DCS and its employees in their official capacities are subject to suit under *Monell v. Department of Social Services,* 436 U.S. 658 (1978), but *Monell* does not apply to States or State agencies. *Joseph v. Bd. of Regents,* 432 F.3d 746, 748-49 (7th Cir. 2005).

As for the personal capacity claims against the State defendants, defendants argue that plaintiff has failed to sufficiently allege the personal involvement of each employee, especially the supervisory employees, so the claims must be dismissed. It is

4

true that personal-capacity liability under Section 1983 depends on a defendant's personal involvement in the deprivation of a constitutional right. *See Kentucky v. Graham,* 473 U.S. 159, 165 (1985). It is also true that the doctrine of respondeat superior may not be the sole basis of an individual's personal-capacity liability. However, at this early stage, "an allegation directed at multiple defendants can be adequate to plead personal involvement." *Rivera v. Lake County,* 974 F. Supp. 2d 1179, 1194 (N.D. Ill. 2013) (citing *Brooks v. Ross,* 578 F.3d 574, 582 (7th Cir. 2009)).

At this point, all that is required of plaintiff is that her complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint need only contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ray,* 629 F.3d at 662-63; *Twombly,* 550 U.S. at 570. If the court can "draw the reasonable inference that the defendant is liable for the misconduct alleged," the allegations are sufficient. *Iqbal*, 556 U.S. at 678.

It is not yet known whether all of the State defendants are actually liable in their personal capacities. However, it is *plausible* that all of the State defendants, including supervisors, could have had actionable, personal involvement in this case. The precise nature of who did what is not known; this is not a barrier at the motion to dismiss phase. To decide otherwise would require the dismissal of any suit where an entity like DCS was able to keep its internal actions so secretive that no potential plaintiff could possibly fashion a complaint that could survive Rule 12(b)(6). As the Seventh Circuit

5

articulated on this topic, the "children's game of pin the tail on the donkey" is not a "proper model for constitutional tort law." *Rodriguez v. Plymouth Ambulance Serv.,* 577 F.3d 816, 821 (7th Cir. 2009). Neither Rule 8, nor *Twombly* nor *Iqbal,* call for the level of factual specificity demanded by defendants. At this point, plaintiff's claims against the State defendants in their personal capacities are plausible and put them on notice of the claim. That is all that is required.

Defendants point to defendant Terry J. Stigdon, specifically, as worthy of dismissal from the case, as defendants claim Stigdon was not appointed director of DCS until months after the events relevant to this lawsuit. However, despite defendants' suggestion to the contrary (DE # 58 at 2 n.2), this issue involves factual matters beyond the pleadings. Accordingly, it is an issue appropriate for consideration in the context of a motion under Federal Rule of Civil Procedure 56, but not the present motion under Rule 12(b)(6). *See Thompson v. Illinois Dep't of Prof'l Regulation,* 300 F.3d 750, 753 (7th Cir. 2002).

      2.     *Benchmark*

Benchmark has also moved to dismiss the Section 1983 claims against it. Unfortunately, all of the parties' briefs related to Benchmark's motion conflate two distinct issues: (1) whether the allegations state a legal claim for relief under Section 1983; and (2) whether the factual allegations are sufficiently pleaded under Rule 8. The former issue should be decided first.

6

All parties agree that Benchmark is a private company. Generally, a private actor does not act under color of state law and is not subject to Section 1983 liability. *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351 (1974). However, if Benchmark is legally a "state actor" in the context of this lawsuit, it may be liable under Section 1983. "The Supreme Court has set forth various tests to use when deciding whether someone is a governmental actor, including the symbiotic relationship test, the state command and encouragement test, the joint participation doctrine, and the public function test." *Listecki v. Official Comm. of Unsecured Creditors*, 780 F.3d 731, 738 (7th Cir. 2015) (internal quotation omitted). "But [a]t its most basic level, the state action doctrine requires that a court find such a close nexus between the State and the challenged action that the challenged action may be fairly treated as that of the State itself." *Id.* (internal quotations omitted). While plaintiff's argument is not entirely plain, it appears she relies primarily on the idea that Benchmark performs a public function when it operates as a foster care placement service.

Whether a private entity providing foster care placement services for the State of Indiana is a "state actor" for purposes of Section 1983 liability is apparently an undecided question in this circuit. In other circuits, this question has been resolved in various ways, depending on the relevant state's particular history of approaching care for children in need. *Compare Phelan ex rel. Phelan v. Torres*, 843 F. Supp. 2d 259, 271 (E.D.N.Y. 2011) (foster care agencies do not perform a function that has been "traditionally exclusively reserved to the State [of New York]"); *with Smith v. Beasley*,

7

775 F. Supp. 2d 1344, 1353 (M.D. Fla. 2011) (pursuant to Florida statute, foster care was public function traditionally within exclusive prerogative of State of Florida).

As these cases make clear, the public function analysis necessarily involves consideration of relevant state legislation and history. Unfortunately, in this case, the parties' briefs are entirely lacking citations to law and argument in this vein. Indeed, the most notable reference to Indiana law in any brief in this case appears in one sentence in Benchmark's reply brief. (DE # 74 at 7.) The court need not consider inadequately briefed issues. *United States v. Collins,* 796 F.3d 829, 836 (7th Cir. 2015). Accordingly, the court denies Benchmark's motion to dismiss to the extent it has argued it is not a "state actor" for purposes of plaintiff's Section 1983 claim, without prejudice and with leave to refile. The court reserves ruling on the other issues related to the Section 1983 claim against Benchmark, as they may become moot depending on the outcome of the "state actor" question.

    B.  **Claims under 42 U.S.C. § 601 and 45 C.F.R. § 233** *et seq.*

Both DCS and Benchmark have moved to dismiss plaintiff's claim under 42 U.S.C. § 601, which addresses federal grants to states for the Temporary Assistance for Needy Families program, and 45 C.F.R. § 233, *et seq.*, which governs states' implementation of financial assistance program coverage. Defendants argue that these statutes permit no private right of action. Plaintiff has not cited, and the court has not located, a single statutory provision or case from any jurisdiction holding that plaintiff has a private right of action under either of these laws, and the court will not create one

8

absent precedent. Accordingly, plaintiff's claims under 42 U.S.C. § 601 and 45 C.F.R. § 233, *et seq.*, are dismissed.

## IV.  CONCLUSION

For the foregoing reasons, the motions to dismiss (DE ## 57, 64) are **GRANTED, in part, and DENIED, in part.**

**SO ORDERED.**

Date: September 29, 2020

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT

9